THE STATE OF OHIO, APPELLEE, *v.* MAX W. FENBERG & SONS, INC., APPELLANT.

(No. 16-76-5—Decided July 23, 1976.)

*Mr. Forrest H. Bacon,* prosecuting attorney, for appellee.

*Mr. Russell E. Rakestraw,* for appellant.

GUERNSEY, J. The defendant corporation, appellant herein was charged in the Upper Sandusky Municipal Court with a violation of R. C. 343.01 and 343.99 on June 18, 1975, hauling "garbage and refuse from Wyandot County, Ohio to outside of the County of Wyandot and not to the landfill operated by said Board of County Commissioners in said Wyandot County, Ohio," and not in compliance with "rules and regulations having been adopted by said Board on July 15, 1968 and amended June 2, 1975."

It appears from the record that the Board of County Commissioners by resolution established a landfill operation located in Wyandot County on or about July 10, 1968, and in their resolution adopted by reference "the rules,

regulations and procedures prescribed by the Ohio Department of Health and the Wyandot County General Health District"; that in the rules and regulations of the latter "refuse" is defined as "all putrescible and non-putrescible solid wastes of a person [includes corporation] including garbage, rubbish, ashes and dead animals, but not including body wastes," and "garbage" is defined as "putrescible animal and vegetable wastes resulting from the handling, processing, preparation, cooking and serving of food"; that by resolution adopted on June 2, 1975, the Board of County Commissioners, reciting the necessity for the successful operation and governing of the disposal of refuse and garbage that only one sanitary refuse and garbage landfill be operated within the county prescribed that "all garbage and refuse originating within the County of Wyandot be transported and hauled to and disposed of in the above sanitary refuse and garbage land fill"; that the facts constituting the alleged offense consisted of the defendant's picking up from a customer location in Wyandot County (a) wood pallets and skids, (b) fiberglass and polyester resin materials, (c) polyethylene film, and (d) cardboard and paper, and hauling them in a compactor truck to and disposing of them in a landfill located in Hancock County; that although there was evidence that on other occasions a large part of similar materials would be salvaged by the defendant the stipulation precluded such salvage on the date in question as not being economically practicable; that although there was also evidence that pickups at other times would have included a small percentage of non-salvageable materials including food wastes, used sanitary napkins, etc., no evidence was offered that the pickup in question included such materials; that the landfill was operated pursuant to a contract with the county by a private operator on private land at rates periodically fixed by the county and that because of the volume of the defendant's business, its using the Hancock County landfill instead of the Wyandot County landfill meant considerable loss of revenue to the Wyandot County operation; and that evidence of defendant rejected and proffered would

tend to prove that the defendant would have had, a considerable increase in its costs had it used the Wyandot County landfill rather than the one located in Hancock County.

On this state of the record the defendant was found guilty and sentenced. It now appeals from that judgment stating that the trial court erred (1) "in determining, as a matter of law, that the rules and regulations of the Board of County Commissioners of Wyandot County, Ohio, passed June 2, 1975, were a proper exercise of the police powers of said Board of County Commissioners"; (2) "in excluding the testimony of the defendant as to defendant's additional costs and expenses of operation in complying with the rules and regulations of the Board of County Commissioners Wyandot County, Ohio, passed June 2, 1975"; and (3) in that its decision "is contrary to and against the manifest weight of the evidence." For convenience we will consider the last assignment of error first.

As the Board of County Commissioners adopted the regulations of the county board of health by reference, we will consider such regulations, to the extent applicable, controlling as to the matter of definition. There was no evidence offered by the state that on the date in question the matter hauled by the defendant included any "wastes resulting from the handling, processing, preparation, cooking and serving of food." Accordingly, we must conclude that the load did not contain any "garbage" as so defined. The critical issue in the determination of whether the load constituted "refuse" in the light of the board of health definition is whether such consisted of "solid wastes," not further defined by such regulations. There can be no reasonable question that the matter included in the load was solid. In the sense applicable here, Webster's Third New International Dictionary (1971) defines "waste" as "damaged, defective, or superfluous material produced during or left over from a manufacturing process or industrial operation," and further defines "refuse" as "the worthless or useless part of something." See, also, R. C. 3734.01(E). Thus, considering its source, the ma-

terial hauled on the date in question (as well as like material hauled on any other date) constituted "waste." Though on another date and under other economic factors it might not have been worthless or useless, it was being thrown away by the defendant on the date in question as worthless or useless to it.

We accordingly conclude that the materials involved constituted "refuse" and that the evidence showed that the refuse originated within Wyandot County and was not "transported and hauled to and disposed of in the" Wyandot County landfill but, on the date in question, was transported and hauled to and disposed of in the Hancock County landfill. Based on such conclusion we must also conclude that the trial court's decision that the regulation of the Board of County Commissioners had been violated was not contrary to and against the weight of the evidence.

Because of their interrelationship we will then consider the first and second assignments of error together.

If the defendant could not properly complain of the loss which would result to it from the enforcement of the regulation against it, it cannot then complain of the exclusion of evidence relating to such loss. It is a well established principle of law that such loss constitutes *damnum absque injuria* when the police power is properly exercised. It is stated in 16 Corpus Juris Secundum 973, 981, Constitutional Law, Section 199, and the authorities therein cited:

"The state may, in a clear case, enact laws regulating, restraining, and prohibiting those things which are harmful to the well-being of the people, although such regulation, restraint, or prohibition interferes with, curtails, or diminishes personal and property rights; and since the very foundation of the police power is the control of private interests for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person or property are subjected to restraint or that loss will result to individuals from its enforcement. Accordingly, if one suffers loss occasioned by the invasion of individual rights by the state

in the legitimate exercise of the police power, it is *damnum absque injuria*, or, in the theory of the law, the injured person is compensated by sharing in the general benefits which the regulations are intended and calculated to secure.''

We thus come to the ultimate question: Was there a legitimate exercise of the police power by the Board of County Commissioners of Wyandot County when it adopted its regulation that ''all garbage and refuse originating within the County of Wyandot be transported and hauled to and disposed of in the'' Wyandot County landfill?

The General Assembly has delegated to each board of county commissioners authority under R. C. 343.01 to ''make, publish, and enforce rules and regulations for the construction, maintenance, protection, and use of garbage and refuse collection and disposal facilities,'' not inconsistent with the regulations of the director of environmental protection, and such provision is the only provision in law from which the board's authority to regulate garbage and refuse collection and disposal is derived. Compare, R. C. 3734.01, *et seq.* The General Assembly is not permitted, however, to abdicate its own police power on any subject and to confer such power on a board to be exercised according to the uncontrolled discretion of such board. 16 Corpus Juris Secundum 909, 912, Constitutional Law, Section 178, n. 54. Applying these standards, the regulation, not purporting to be ''for the construction, maintenance, or protection of garbage and refuse collection and disposal facilities,'' was it then a proper regulation for their use?

The practical effect of the quoted regulation is to make the Wyandot County landfill, owned by a private operator and operated under a contract with the commissioners, to be used for the disposal of any and all garbage and refuse generated in Wyandot County, in effect a monopoly. Can we gather any further enlightment as to legislative intent from pertinent statutes?

R. C. 343.01 prescribes, in part:

''(A) * * * The board may acquire, by purchase, or

lease, construct, improve, enlarge, replace, maintain, and operate such garbage and refuse collection systems within any such district and such garbage and refuse disposal plants and facilities within or without any such district as are necessary for the protection of the public health.

"* * * No garbage and refuse disposal system plant or facilities shall be constructed in any county outside municipal corporations by any person, firm, or corporation until the plans and specifications for such plant or facilities have been approved by the board. * * *

"The board may enter into a contract with any individual, partnership, or private corporation for the operation and maintenance of any such facilities, regardless of whether such facilities are owned or leased by the county or by the contractor. * * *."

R. C. 343.02 prescribes, in part:

"* * * The board may contract with any municipal corporation located within or outside the district for the furnishing of the garbage and refuse disposal services of such district, but contracts with municipal corporations for territory outside the county shall be limited to surplus capacity of the garbage and refuse disposal facilities of the county remaining after the needs of the county have been met. * * *

"The board of county commissioners may contract with any board of township trustees which has availed itself of sections 505.27 to 505.33, inclusive, of the Revised Code, and with boards of education, for furnishing of garbage and refuse disposal services to said townships and boards of education. Any board of education availing itself of such service shall act by resolution of its board."

R. C. 343.04 to R. C. 343.08, inclusive, then provide for the preparation of a general plan of garbage and refuse disposal facilities by the county sanitary engineer after a board of county commissioners has established a garbage and refuse disposal district, for the approval of such plan by the board, for the construction and acquisition of improvements and equipment, the issuance of revenue bonds in payment therefor, the fixing of rates and charges for

collection and disposal and the charging of such against improved lots or parcels in the district, as well as under contract with political subdivisions, corporations, private collectors, etc.

In our opinion, particularly in consideration of these various statutory provisions, the legislature contemplated private as well as governmental enterprise and did not intend that a garbage and refuse monopoly should exist in a county unless the same were the result of a general plan approved by the commissioners resulting in the issuance of revenue bonds for improvements requiring "captive" customers for the production of income for their retirement. It is apparent that except for an operation pursuant to such general plan and pursuant to the issuance of revenue bonds it was intended by the General Assembly that the freedom to contract both for the service and for the rates for service should exist between the board of commissioners and prospective users including boards of education, municipalities, and townships both within and without the county. A monopoly mandating the use of the landfill by all garbage and refuse producers within the county at a rate fixed unilaterally by the county commissioners and paid directly to the landfill operator is wholly inconsistent with such freedom of contract. Moreover, the fact that the General Assembly contemplated that garbage and refuse be brought in from another county indicates that except where a general plan with improvements financed by revenue bonds should be involved, there should be freedom of movement of such garbage and refuse from one county to another.

Accordingly, we are of the further opinion that except for the general plan situation the legislative intent with respect to bestowing on boards of county commissioners the authority to regulate the "use of garbage and refuse collection and disposal facilities" is to permit the regulation of the manner in which such facilities are used and not to compel their use. So construed, there being no general plan and revenue bonds involved, it was beyond the authority of the Board of County Commissioners of

Wyandot County to require by regulation that the landfill here involved be used for all garbage and refuse originating within Wyandot County. If the General Assembly should decide otherwise, it is within its prerogatives to so legislate.

Thus, the regulation is invalid not because it is unconstitutional, but because it is beyond the authority delegated to the commissioners in this situation. The first assignment of error is then well taken on this ground and the judgment, therefore, prejudicially erroneous. The second assignment of error is not well taken because the evidence proffered had no relevancy in any event to the issues before the court.

*Judgment reversed.*

COLE, P. J., and MILLER, J., concur.